IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 10-00257-01-CR-W-DGK |
| KAI LUNDSTROEM PEDERSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## TO ACCEPT DEFENDANT'S GUILTY PLEA

On September 6, 2011, I held a change-of-plea hearing after this case was referred to me by United States District Judge Greg Kays. I find that defendant's plea was voluntary and therefore recommend that it be accepted.

## *I. BACKGROUND*

On September 29, 2010, an indictment was returned charging defendant with, inter alia, one count of production of child pornography, in violation of 18 U.S.C. § 2251(a); one count of extortion, in violation of 18 U.S.C. § 875(d); and one count of transportation of child pornography over the Internet, in violation of 18 U.S.C. § 2252(a)(1). Judge Kays referred this case to me for conducting a change-of-plea hearing and issuing a report and recommendation on whether to accept the plea. The hearing was held on September 6, 2011. Defendant was present, represented by appointed counsel Ronna Holloman-Hughes. The government was represented by Assistant United States Attorney David Patrick Daly. The proceedings were recorded and a transcript of the hearing was filed on September 14, 2011.

## II. AUTHORITY OF THE COURT

Although the issue has not been widely litigated, the several courts faced with the question of whether a United States Magistrate Judge has authority to conduct a change-of-plea hearing have held that there is such authority.  Determining whether a judicial duty is properly delegable to a Magistrate Judge requires a two-part analysis:  First, it must be determined whether Congress intended for Magistrate Judges to perform the duty in question, and second, it must be determined whether the delegation of the duty to a Magistrate Judge "offends the principles of Article III of the Constitution."  United States v. Dees, 125 F.3d 261, 264 (5th Cir. 1997), cert. denied, 522 U.S. 1152 (1998).

Although the Magistrates Act, 28 U.S.C. § 636, does not specifically mention change-of-plea hearings, it provides that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."  28 U.S.C. § 636(b)(3).  Courts have used this language to conclude that plea allocutions do not differ markedly from other duties performed by Magistrate Judges and therefore are assignable to them under the Act.  See United States v. Woodward, 387 F.3d 1329 (11th Cir. 2004); United States v. Dees, 125 F.3d at 265; United States v. Ciapponi, 77 F.3d 1247, 1251 (10th Cir.), cert. denied, 517 U.S. 1215 (1996); United States v. Williams, 23 F.3d 629, 633 (2nd Cir.), cert. denied, 513 U.S. 1045 (1994); United States v. Rojas, 898 F.2d 40, 42 (5th Cir. 1990).

The courts making the above determination also found that referring cases to Magistrate Judges for change-of-plea hearings was not in conflict with Article III of the Constitution.  "Because the district court retained full authority to review and reject the magistrate judge's recommendation, the delegation did not exceed the scope of magisterial authority contemplated by the Act. . . .  A

district court has the power to review de novo a magistrate's taking of a guilty plea, and it can reject the plea if it finds a problem in the allocution." <u>United States v. Dees</u>, 125 F.3d at 265. In addition, the district court has "unfettered authority to review a magistrate judge's recommendation regarding the voluntariness of a plea." <u>Id</u>.

Based on the above, I find that the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. FINDINGS OF FACT

1.      On September 29, 2010, an indictment was returned charging defendant with, <u>inter alia</u>, production of child pornography, extortion and transportation of child pornography over the Internet (Tr. at 4-5). Defendant was informed of the charges against him and indicated that he understood the nature of the charges (Tr. at 4-5).

2.      The statutory penalty for production of child pornography is not less than 15 years and not more than 30 years imprisonment, potential fines of up to $250,000, not less than 5 years but up to life on supervised release, and a $100 mandatory special assessment (Tr. at 5-6). The statutory penalty for extortion is not more than 2 years imprisonment, potential fines of up to $250,000, not more than 1 year on supervised release, and a $100 mandatory special assessment (Tr. at 6). The statutory penalty for transportation of child pornography over the Internet is not less than 5 years but not more than 20 years imprisonment, potential fines of up to $250,000, not less than 5 years but up to life on supervised release, and a $100 mandatory special assessment (Tr. at 6). Defendant was informed of the penalty ranges and indicated that he understood them (Tr. at 5-6).

3.      Defendant was advised of the following:

   a.  That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 7-8);

   b.  That he has the right to assistance of counsel throughout the trial (Tr. at 8);

   c.  That defendant is presumed innocent, and the government has the burden of coming forward to prove defendant's guilt beyond a reasonable doubt (Tr. at 8);

   d.  That defendant's attorney would have the opportunity to cross examine the government witnesses (Tr. at 8-9);

   e.  That defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that defendant may not testify at trial (Tr. at 9);

   f.  That defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 9-10); and

   g.  That defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 10-11).

4.  Defendant was informed and understood that by pleading guilty, he is giving up all of the rights described above (Tr. at 7-11).

5.  Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 11). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 11). Defendant stated that he understood (Tr. at 11).

6. Government counsel stated that the Government's file was disclosed to defense counsel (Tr. at 11). Counsel for the Government stated that the government's evidence would be that in August of 2010, local authorities were notified that an 11-year-old girl had been receiving communications from a variety of aliases via Facebook and via e-mail accounts (Tr. at 13). The messages included images of video of her that depicted sexual activity as well as her in various states of undress (Tr. at 13). Not only did the girl advise she had received these, she also advised that family, friends and other people had received them as well (Tr. at 13). An investigation was initiated through Facebook and through the e-mail providers (Tr. at 13). Law enforcement agents were able to connect the origination of the communications to various addresses in Denmark (Tr. at 13). It was determined that the individual who had sent the communications was defendant and that he was present in the United States (Tr. at 13). Contact was then made with authorities in Denmark (Tr. at 13). Homeland Security Investigations Special Agent Jim Kanatzar went to Denmark to review physical evidence and copy the digital evidence (Tr. at 13). He found images that had been sent to the victim, her family, friends and classmates, in defendant's workplace and home (Tr. at 13-14). Special Agent Kanatzar found the initial production of child pornography as well messages transporting and distributing the production (Tr. at 14). Special Agent Kanatzar also found communications to the victim in which defendant attempted to get her to re-contact him; some communications included threats of death and rape (Tr. at 14).

7. Defense counsel agreed that the government's summation of the evidence was accurate (Tr. at 14).

8. Defendant was placed under oath (Tr. at 12) and admitted the following. Between July 1, 2010 and July 13, 2010, Defendant used a minor to engage in sexually explicit conduct for

the purpose of producing a visual depiction of the conduct (Tr. at 15). Defendant knew or had reason to know that the visual depiction would be transmitted or sent in interstate or international foreign commerce (Tr. at 15).

Defendant further admitted that between July 14, 2010 and September 3, 2010, he knowingly and with intent to extort a thing of value from the victim, transmitted in interstate and foreign commerce, a communication that was a threat to injure the property or reputation of the victim.

Lastly, Defendant admitted that on July 15, 2010, he knowingly transported in interstate and foreign commerce by computer, a visual depiction that involved a minor engaging in sexually explicit conduct (Tr. at 16).

Defendant knew that all these acts were against the law, yet did so voluntarily (Tr. at 17). He did not dispute that the victim was a minor (Tr. at 18).

9.     Defendant had reviewed the plea agreement with his attorney and stated he understood the terms of the agreement (Tr. at 18). I also reviewed the terms of the plea agreement with the defendant (Tr. at 18-26).

10.     All promises made by the government were contained within the plea agreement (Tr. at 26). No one had made any threats or any other promises in order to get the defendant to plead guilty (Tr. at 26).

11.     Defendant is satisfied with the advice and guidance he has received from Ms. Holloman-Hughes (Tr. at 26). There is nothing Ms. Holloman-Hughes has done that defendant did not want her to do, and there is nothing he wanted Ms. Holloman-Hughes to do that Ms. Holloman-Hughes has not done (Tr. at 26-27).

12.     Defendant is sixty-one years old (Tr. at 27). He attended school until he was 17 (Tr. at 27).   Defendant speaks English well and did not have any difficulty understanding proceedings or communicating with his attorney (Tr. at 27-28).   There is nothing about defendant's mental health to cause any concern about him tendering a guilty plea (Tr. at 28). Defendant was not on any kind of substance that would interfere in his ability to make an informed decision about pleading guilty (Tr. at 28).

13.     Defendant tendered a plea of guilty to the crimes charged in Counts I, II and III of the indictment (Tr. at 29-30).

## V.  ELEMENTS OF THE CHARGED OFFENSES

The elements necessary to sustain a conviction for production of child pornography are as follows: (1) the defendant believed during the time period alleged in the indictment that the child named in the indictment was under the age of 18; (2) the defendant attempted to use, persuade, induce, entice, or coerce that child to engage in sexually explicit conduct; (3) the defendant voluntarily and intentionally engaged in this behavior for the purpose of producing a visual production of such conduct; and (4)   that the materials used to produce the visual depiction were mailed, shipped, or transported, including by computer, in interstate or foreign commerce.  United States v. Pierson, 544 F.3d 933, 938 (8th Cir. 2008).

The elements necessary to sustain a conviction for extortion are as follows: (1) the defendant had an intent to extort from any person, firm association or corporation, any money or other thing of value; (2) the defendant transmitted in interstate or foreign commerce a communication; (3) containing a threat to injure the property or reputation of another or a threat to accuse another of a crime.  18 U.S.C. § 875(d); Keys v. United States, 126 F.2d 181, 183 (8th Cir. 1942).

The elements necessary to sustain a conviction for transportation of child pornography over the Internet are as follows: (1) the defendant knowingly transported or shipped; (2) in interstate or foreign commerce; (3) any visual depiction involving the use of a minor engaging in sexually explicit conduct. <u>See</u> <u>United States v. Chambers</u>, 441 F.3d 438, 449 (6th Cir. 2006).

## *V. CONCLUSION*

Based on the above, I make the following conclusions:

1.      The district court may lawfully refer this case to a Magistrate Judge for issuance of a report and recommendation on whether defendant's guilty plea should be accepted.

2.      Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crimes charged in this indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting defendant's guilty plea and adjudging defendant guilty of the offenses charged.


*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
September 16, 2011